## STATE OF CONNECTICUT *v.* ROBERT ALEXANDER
## (SC 16943)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued February 10—officially released May 25, 2004

*Michael A. Georgetti,* for the appellant (defendant).

*Timothy J. Sugrue,* senior assistant state's attorney, with whom were *James E. Thomas,* state's attorney, and *Edward Narus,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, C. J. The defendant, Robert Alexander, pleaded guilty under the *Alford*[1] doctrine to one count each of unlawful restraint in the first degree in violation of General Statutes § 53a-95,[2] assault in the first degree in violation of General Statutes § 53a-59 (a) (3)[3] and assault in the third degree in violation of General Stat-

---

[1] *North Carolina* v. *Alford,* 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

[3] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

utes § 53a-61 (a) (1).[4] The defendant was sentenced to a total effective sentence of fourteen years imprisonment, execution suspended after three years, with five years of probation with conditions in accordance with his plea agreement. After the defendant began serving his sentence, the state filed a request for a standing criminal restraining order (restraining order) pursuant to General Statutes § 53a-40e,[5] against the defendant with respect to one of the victims. The defendant objected on the ground that the trial court lacked jurisdiction to entertain the state's request after his sentence had already been put into effect. The court held a hearing and imposed the restraining order. This appeal followed.[6] We affirm the ruling of the trial court imposing the restraining order.

The following facts and procedural history are pertinent to our resolution of this appeal. The defendant's convictions arose from two separate incidents of domestic violence. The victim in the first incident had been romantically involved with the defendant and they had a son together. After an argument on May 4, 2001, the defendant punched the victim in the face, rendering her unconscious, and then dragged her down a flight of stairs to the basement of their residence. When the victim regained consciousness, she had duct tape wrapped around her head, hair and mouth. Her mouth was filled with blood, her face was cut and she had a black eye. She went to a hospital, where she received forty-seven stitches to close the wounds on her face. She reported the incident to the police five days later

[4] General Statutes § 53a-61 provides in relevant part: "(a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[5] See footnote 12 of this opinion.

[6] The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

when she was well enough to go to the police station on her own. The defendant was charged with assault in the first degree with respect to this incident.

The victim in the second incident is the couple's son. On May 9, 2001, the defendant asked his son to pick up some items in the living room. When the boy refused, the defendant grabbed him by the throat, forced him to the floor, and banged his head on the floor at least twice. The second victim reported the incident to an adult at school who contacted the department of children and families. The defendant was subsequently charged with unlawful restraint in the first degree and assault in the third degree.

The defendant pleaded guilty pursuant to the *Alford* doctrine to assault in the first degree with respect to the first incident and assault in the third degree and unlawful restraint with respect to the second incident. At his sentencing hearing, the defendant made several remarks that the court found offensive.[7] Although the

[7] "[The Defendant]: I think a year and a half to get to this point I think is a little ridiculous. I think that—this is what I said from the very beginning and we're—we've gotten back to that point. And we could have resolved this months and months and months ago. But the victim puts on a real good show and it's awful and I didn't want to go to court to have to deal with that kind of display.

\* \* \*

"[The Court]: This was a troubling case, in my opinion, before we got here today. [W]hat happened to the victim here obviously goes beyond wrong and almost beyond criminal, it was cruel, absolutely cruel. . . . And I thought we were at a bad point until recently, but what's troubled me even more and what offends me, offends this court even more, is that having victimized the victim once, that anybody would even think about coming to this court and attempting to degrade and find fault with the victim, that's astonishing. That's absolutely incredible—

"[The Defendant]: She's alive.

"[The Court]: Well, you're not helping yourself, sir, I'm telling you now.

"[The Defendant]: That's all right. It has to be said.

"[The Court]: Well, I've—I've listened to you, now you're going to listen to me, sir. I don't care what you think about the victim in this case. There is no human being, that I know of, that deserves to be beaten—

"[The Defendant]: It was one punch, one punch—

court indicated that it was inclined to impose a higher sentence because of the defendant's remarks, it sentenced the defendant to fourteen years imprisonment, execution suspended after three years, with probation for five years with conditions in accordance with his plea agreement.[8]

After the defendant began serving his sentence, the state requested that the court impose a restraining order pursuant to § 53a-40e[9] to protect the first victim.[10] The state sought the restraining order because it was concerned about the victim's safety. That concern was based in part on the hostile comments made by the defendant during his sentencing hearing.

The defendant argued that the restraining order was an additional penalty and that the court was without jurisdiction to impose such a penalty after the defendant had begun serving his sentence. The court concluded that the restraining order was not punitive, that it was for the protection of the victim, and, therefore, that it had jurisdiction to impose it. The court entered a restraining order that prohibited the defendant from imposing any restraint upon the person or liberty of the victim; entering the family dwelling or the dwelling of the victim; threatening, harassing, assaulting, molesting, or sexually assaulting the victim; having any contact

"[The Court]: —that deserves to have—

"[The Defendant]: And I'm sorry for it.

"[The Court]: Sir, don't say anything because I'm going to add to your sentence, I'll find you in contempt."

[8] The conditions were: no direct or indirect contact with the first victim; contact with the second victim only if initiated by the second victim; anger management counseling and treatment; substance abuse evaluation and treatment if necessary; compliance with support orders; reimbursement of medical expenses; and no possession of weapons of any type.

[9] See footnote 12 of this opinion.

[10] The second victim was excluded from the restraining order because the state did not want to prevent him from initiating contact with his father if he chose to do so.

in any manner with the victim; coming within 100 yards of the victim; stalking the victim; and entering the victim's place of employment.

The defendant argues on appeal that: (1) the court lacked subject matter jurisdiction to impose the restraining order because the defendant already had started serving his sentence and § 53a-40e provides that criminal restraining orders may be imposed only at sentencing; (2) the court violated the terms and conditions of the plea agreement by imposing the additional punishment of the restraining order; and (3) the court violated the defendant's substantive and procedural due process rights and the prohibition against double jeopardy by imposing an additional penalty after sentencing. The state responds by claiming, inter alia, that the court had subject matter jurisdiction because the restraining order was not punitive in nature and because the court's authority to impose a restraining order under § 53a-40e is not time limited.

We first set forth our standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Alliance Energy Corp.* v. *Planning & Zoning Board*, 262 Conn. 393, 398, 815 A.2d 105 (2003).

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring juris-

diction should be indulged." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999).

"This court has held that the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action *affecting a defendant's sentence* unless it expressly has been authorized to act." (Emphasis added.) *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37, 779 A.2d 80 (2001). The defendant claims that the court's imposition of the restraining order affected his sentence and that § 53a-40e did not authorize the court to modify his sentence. We conclude that the imposition of the restraining order did not constitute punishment. Accordingly, we reject the defendant's claim.

In *State* v. *Waterman*, 264 Conn. 484, 485–87, 825 A.2d 63 (2003), this court considered whether a trial court had jurisdiction to hold a hearing, to make a factual finding and to advise the defendant, who had been convicted of one count of public indecency, with respect to the mandatory sex offender registration requirements mandated by General Statutes § 54-251, after he had begun serving his sentence. The defendant argued that "the registration requirement was a punitive sanction constitut[ing] a substantive change in the judgment, and that, in the absence of an express legislative grant of continuing jurisdiction, once he had begun serving his sentence the court no longer could make the factual finding that subjected him to the sex offender registration requirements pursuant to § 54-251." (Internal quotation marks omitted.) *State* v. *Waterman*, supra, 489. The state argued that "the trial court did not open or correct the defendant's sentence; it merely effectuated the regulatory purpose of [the statute]. . . . [T]he defendant's sentence was not affected by the trial

court's determination that he must comply with the statute." Id.

Our analysis hinged upon whether § 54-251 was punitive in nature, and thus an additional punishment. Id., 492. In deciding that the statute was not punitive, we used the two part test set forth in *Doe* v. *Pataki*, 120 F.3d 1263, 1274–76 (2d Cir. 1997), which concerned whether New York's sex offender registration statute was punitive. *State* v. *Waterman*, supra, 264 Conn. 492. The test was adopted by this court, with respect to § 54-251, in *State* v. *Kelly*, 256 Conn. 23, 92–94, 770 A.2d 908 (2001), wherein this court considered whether § 54-251 is punitive in nature. *State* v. *Waterman*, supra, 492. "[U]nder the first part of the test, the court examined whether the legislature had intended the statute to be criminal or civil, in other words, 'punitive in law.' . . . Under the second part of the test, the . . . court considered whether, even if not punitive in law, the statute was nevertheless 'punitive in fact,' that is, whether the statute was so punitive in fact that it could not be seen as civil in nature." (Citation omitted.) Id., 492–93.

In *Waterman*, we concluded that § 54-251 was not punitive. Id. We also determined that "[b]ecause these regulatory requirements [of the sex offender registry] are ministerial, the trial court did not have to revisit the sentence in order to inform the defendant of his obligations. Indeed, making the factual finding and informing the defendant of these requirements pursuant to § 54-251 did not necessitate any modification, opening or correction of the sentence. In short, the defendant's sentence was not affected by the trial court's factual finding and advisement that he must comply with the statute. Rather, the court merely was effectuating the regulatory purpose of [the statute]. As the Appellate Court noted in *State* v. *Pierce*, [69 Conn. App. 516, 529, 794 A.2d 1123 (2002), cert. granted, 261 Conn. 914, 806 A.2d 1056 (2002)], '[i]n this case, we are not dealing

with a sentencing factor or a sentencing enhancement, but with a finding to be made after conviction that has no effect until after a defendant's sentence has been served.' " *State* v. *Waterman*, supra, 264 Conn. 497–98.

As in *Waterman*, our analysis of the defendant's claim that the court lacked jurisdiction to impose the restraining order after he had started serving his sentence turns on whether imposition of a restraining order pursuant to § 53a-40e is punitive. Applying the two part test used in *Waterman*, we first consider whether the legislature intended § 53a-40e to be "punitive in law." Id., 492. Under Public Acts 2003, No. 03-154,[11] we must determine as a threshold question whether the text of § 53a-40e is plain and unambiguous.[12] The statute allows

[11] Public Acts 2003, No. 03-154, § 1, provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[12] General Statutes § 53a-40e provides in relevant part: "(a) If any person is convicted of a violation of section . . . 53a-59a . . . against a family or household member as defined in subdivision (2) of section 46b-38a, the court may, *in addition to imposing the sentence authorized* for the crime under section 53a-35a, if the court is of the opinion that the history and character and the nature and circumstances of the criminal conduct of such offender indicate that *a standing criminal restraining order will best serve the interest of the victim and the public, issue a standing criminal restraining order* which shall remain in effect until modified or revoked by the court for good cause shown.

"(b) Such standing criminal restraining order may include but is not limited to enjoining the offender from (1) imposing any restraint upon the person or liberty of the victim; (2) threatening, harassing, assaulting, molesting, sexually assaulting or attacking the victim; or (3) entering the family dwelling or the dwelling of the victim.

"(c) Every standing criminal restraining order of the court made in accordance with this section shall contain the following language: 'This order shall remain in effect until modified or revoked by the court for good cause shown. In accordance with section 53a-223a, violation of a standing criminal restraining order issued by the court pursuant to subsection (a) of this section shall be punishable by a term of imprisonment of not less than one year nor more than five years, a fine of not more than five thousand dollars or both.' " (Emphasis added.)

the trial court to impose a restraining order "in addition to imposing the sentence authorized . . . ." General Statutes § 53a-40e (a). This reasonably may be read as suggesting that the restraining order is an additional punitive measure. The statute also provides, however, that in deciding whether to issue a restraining order the court must consider whether such an order "will best serve the interest of the victim and the public . . . ." General Statutes § 53a-40e (a). This reasonably may be read as suggesting that the primary focus of the statute is protection of the victim and the public rather than increased punishment of the offender. Because the language of the statute is subject to two reasonable interpretations, it is not plain and unambiguous.

Accordingly, we turn to the legislative history underlying § 53a-40e. Numerous legislators who rose in support of the law spoke about its purpose of protecting victims of domestic abuse. For example, Representative Andrew W. Roraback stated: "[T]his amendment will enable us to do all that we can as a legislature and to allow the courts to do all that they can to protect people that have been abused in circumstances where they are fairly entitled to know, going forward, that they will never again have to encounter the perpetuators of the abuse." 39 H.R. Proc., Pt. 10, 1996 Sess., p. 3328. Representative Brian E. Mattiello stated, "I too rise in support of the amendment. It makes it clear that judges have the power to provide peace of mind to victims of domestic violence and that never will their attackers lawfully be permitted to stalk them at their will." Id. Representative Dale W. Radcliffe stated: "[This amendment] is a welcome addition and follow through to what this Chamber did the other evening concerning the rights of crime victims and the protection of those who have been victimized and . . . brutalized by crimes of violence." Id., p. 3331.

The following exchange between Representative Radcliffe and Representative Ellen Scalettar provides further evidence of the legislature's intent that these restraining orders not be considered punitive:

"[Representative Radcliffe]: Thank you, Mr. Speaker. Of course, any sentence that a sentencing court might issue could be modified by the court in the interim, if that were necessary.

"I am thinking of a situation [in] which additional evidence might come to the attention of a court. An individual was incarcerated; was particularly violent during incarceration; made threats against an individual while incarcerated; information that might not necessarily involve the underlying offense or had been brought to the attention of the court at the time of the sentencing.

"I take it, it is not the purpose of this amendment to preclude a sentencing court from later modifying this, any sentence, to include such an order at that time, based upon those additional facts. Is that correct? . . .

"[Representative Scalettar]: . . . I think I misunderstood the original question. It would have to be the criminal court, but it would not have to be exactly at the time of sentencing, as this is written. . . .

"[Representative Radcliffe]: Through you, again, Mr. Speaker and for purposes of legislative intent. It is not to preclude a court, at a later time, based upon additional evidence of violence or additional threats which might themselves constitute a crime, to allow a court to issue such an order? . . .

"[Representative Scalettar]: . . . That is correct." Id., pp. 3333–34. This legislative history supports the state's position that the purpose of the law is to protect victims from further abuse and not to punish the defendant.

Under the second part of the test, we consider whether § 53a-40e is "punitive in fact." *State* v. *Waterman*, supra, 264 Conn. 493. The following factors set forth in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963), guide our inquiry: "[W]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . ." (Internal quotation marks omitted.) *State* v. *Kelly*, supra, 256 Conn. 92–93.

We recognize that § 53a-40e involves a restraint upon the defendant. As the trial court aptly noted, however, to the extent that the restraining order prohibits the defendant from doing that which is already illegal, i.e., unlawful restraint and assault, it is clearly not punitive. Moreover, to the extent that the restraining order prohibits the defendant from doing something that would otherwise be legal, i.e., being in the vicinity of the victim, we have concluded that such a restriction is not punitive or for the purpose of retribution, but rather, serves the purpose of protecting the victim. We further note that § 53a-40e neither increases the term of imprisonment already imposed upon the defendant nor imposes an additional fine. Further, as we stated in *Waterman*, "we are not dealing with a sentencing factor or a sentencing enhancement, but with [an order] to be made after conviction that has no effect until after a defendant's sentence has been served." (Internal quotation marks omitted.) *State* v. *Waterman*, supra, 264 Conn. 498. The restraining order subjects the defendant to punishment

only if he violates it and it does not require a finding of scienter. See General Statutes § 53a-40e (c). Moreover, the restraining order is not excessive given its purpose of protecting the victim. Accordingly, we conclude that the statute is not punitive in fact.

Because § 53a-40e is not punitive in law or in fact, we conclude that the court's imposition of a standing criminal restraining order upon the defendant did not affect his sentence. Accordingly, the court had jurisdiction to impose the restraining order.

The defendant's remaining arguments, that the restraining order violated the plea agreement by impermissibly enhancing his sentence, and that imposition of the restraining order deprived him of his substantive and procedural due process rights and violated the double jeopardy clause, are based on the defendant's assertion that the restraining order constituted a punitive measure that impermissibly enhanced his sentence. We already have determined that restraining orders pursuant to § 53a-40e are not punitive in nature. Nevertheless, we briefly address each claim in turn to clarify the consequences of this determination.

The defendant correctly states that plea agreements are matters of contract law pursuant to *State* v. *Revelo*, 256 Conn. 494, 517, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001). We do not see, however, any nexus between the sentence to which the defendant agreed in the plea agreement and the subsequent restraining order. We have concluded that the court's imposition of the restraining order did not impermissibly enhance the defendant's punishment and, therefore, did not breach the defendant's plea agreement.

The defendant next argues that the court violated his rights to procedural and substantive due process by imposing the restraining order. The defendant claims

that the court, by granting the restraining order, impermissibly added punitive measures to the defendant's sentence after he had relinquished his constitutionally protected rights by pleading guilty. Once again, the defendant's claims are dependent upon his argument that the restraining order was an enhancement of his punishment. Accordingly, we reject these claims.

The defendant's remaining double jeopardy claim likewise fails because double jeopardy concerns the imposition of multiple punishments. "The prohibition of double jeopardy prevents not only multiple trials, but also multiple punishments for the same offense in a single trial. . . . In the context of a single trial, the threshold issue [in determining whether the double jeopardy clause is implicated is] whether multiple *punishments* have been imposed." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Anderson*, 212 Conn. 31, 35, 561 A.2d 897 (1989). Because we already have determined that the restraining order was not punitive, the court did not violate the prohibition against double jeopardy by entering the order after the defendant had begun serving his sentence.

The judgment is affirmed.

In this opinion the other justices concurred.