PER CURIAM.
**327 The defendant in this declaratory judgment action, the Metropolitan District Commission, a quasi-municipal corporation that provides potable water to eight member and five nonmember towns in the greater Hartford area, appeals[1] from the judgment rendered by the trial court in favor of the plaintiff, the town of Glastonbury. The plaintiff, one of the nonmember towns, brought this action, seeking a determination by the court that, prior to 2014, the defendant unlawfully had imposed surcharges on it and the other nonmember towns. Thereafter, the trial court denied the defendant's motion to strike the plaintiff's complaint on the ground that the plaintiff was required but failed to join the other nonmember towns as indispensable parties. While **328 this action was pending, the legislature enacted No. 14-21 of the 2014 Special Acts (S.A. 14-21),[2] which *204 amended the defendant's charter by authorizing the defendant to impose a surcharge on nonmember towns in an amount not to exceed the amount of the customer service charge. Following the passage of S.A. 14-21, the defendant filed a motion to dismiss, claiming that the special act was retroactive and rendered the plaintiff's claim moot because it answered in the affirmative the question then pending before the court, namely, whether the defendant had the authority to impose a surcharge on nonmember towns. The trial court disagreed and denied the motion, concluding that S.A. 14-21 was not retroactive, and, therefore, it remained to be determined whether the plaintiff was entitled to relief because the surcharges imposed prior to the passage of the special act were unlawful. Thereafter, the parties filed motions for summary judgment, and the trial court concluded that the surcharges imposed on the plaintiff prior to the passage of S.A. 14-21 were unlawful, the plaintiff's claim was not barred by the equitable doctrine of laches, and the plaintiff's claim was justiciable **329 because the plaintiff was entitled to reimbursement for the payments it had made to the defendant on account of the unlawful surcharges. In accordance with these conclusions, the trial court granted the plaintiff's motion for summary judgment and denied the defendant's motion for summary judgment. On appeal, the defendant claims that the trial court incorrectly determined that the plaintiff's claim was justiciable and not rendered moot by S.A. 14-21 or barred by the doctrine of laches.
After examining the record and briefs and considering the arguments of the parties, we are persuaded that the judgment of the trial court should be affirmed. The issues raised by the parties in their motions for summary judgment were resolved properly in the thoughtful and comprehensive memorandum of decision filed by the trial court.[3] Because that memorandum of decision also fully addresses the arguments raised in the present appeal, we adopt the trial court's well reasoned decision as a statement of the facts and the applicable law on those issues. See Glastonbury v. Metropolitan District Commission , Superior Court, judicial district of Hartford, Docket No. HHD-CV-14-6049007-S, 2016 WL 3179757 (May 12, 2016) (reprinted at 328 Conn. 245, 330, 177 A.3d 1157[2018] ). It would serve no useful purpose for us to repeat that discussion here.[4] See, e.g., Tzovolos v. Wiseman , 300 Conn. 247, 253-54, 12 A.3d 563 (2011).
The judgment is affirmed.
*205 APPENDIX
**330 This case concerns an action brought pursuant to General Statutes § 52-29 by the plaintiff, the town of Glastonbury, against the defendant, the Metropolitan District Commission, on February 21, 2014. The plaintiff seeks a declaratory judgment to establish that a surcharge imposed by the defendant on the plaintiff and other nonmember towns for water usage prior to October 1, 2014, was illegal. The complaint sets forth the following allegations. The plaintiff is a municipal corporation organized and existing under the laws of the state of Connecticut. The defendant is a quasi-municipal **331 corporation, established in 1929 by the Connecticut General Assembly. See 20 Spec. Acts 1204, No. 511 (1929). The defendant provides drinking water, water pollution control, mapping and household hazardous waste collection to eight member towns.[1] In addition, the defendant provides drinking water to residents and businesses in portions of Farmington, Glastonbury, East Granby, Portland and South Windsor. These towns are referred to as "[n]on-member" towns. Customers in the nonmembers towns receive only drinking water from the defendant. Approximately 9000 customers are located in the nonmember town areas. The plaintiff is a customer of the defendant. The plaintiff receives and pays for drinking water at various town facilities and properties.
The powers, duties, and obligations of the defendant are compiled in the Charter of the Metropolitan District (charter). When authorizing the defendant to provide water to nonmember towns in 1931, the General Assembly expressly mandated that the defendant must charge customers in nonmember towns "rates uniform with those charged within said district ...." 21 Spec. Acts 328, No. 358 (1931). The only additional charge the General Assembly authorized during this change was that the cost of pipe construction between the district and the nonmember town would be paid by the nonmember town. The plaintiff asserts that the defendant currently imposes a "nonmember surcharge" on recipients of water in nonmember towns, including the plaintiff. In 2011, the defendant added a nonmember surcharge of $52.68 to the annual bill of all water recipients in nonmember towns, irrespective of how much water, if any, was used. The surcharge was subsequently increased in 2013 to $423. In 2014, the amount was reduced to $198.96 after complaints from various nonmember **332 towns. According to the defendant, it intended to offset the 2014 surcharge reduction by extending the time period during which it would be paid to twenty-five years. The plaintiff further asserts that, although the defendant's representatives have stated that the addition of the foregoing surcharges reflect costs associated with capital improvements necessary to provide or maintain water service to each particular nonmember town, other information from the defendant has indicated that the surcharges in fact were an attempt to recapture district wide costs long ago incurred for capital improvements to the defendant's water infrastructure, beyond those relating to providing or maintaining water service to a particular community.
The plaintiff asserts that the General Assembly has not authorized the defendant to impose such surcharges, that the defendant does not have any legislative *206 authority to impose these nonmember surcharges on the plaintiff, and, therefore, the surcharges are unlawful. Pursuant to § 52-29,[2] the plaintiff seeks a declaratory judgment ruling that the defendant has acted unlawfully, exceeded its legislative authority, and acted to the detriment of the plaintiff. On May 7, 2014, the Senate passed No. 14-21 of the 2014 Special Acts (S.A. 14-21), amending the charter to allow for surcharges.
On August 13, 2015, the plaintiff filed a motion for summary judgment on the ground that the defendant, as a matter of law, exceeded its statutory authority by imposing a nonmember surcharge on the plaintiff and cannot establish any of its special defenses. On December 11, 2015, the defendant filed a memorandum in opposition. That same day, the defendant filed its own motion for summary judgment on the ground that there **333 is no justiciable case or controversy between the parties. On February 2, 2016, the plaintiff filed a brief in reply to the defendant's opposition and in opposition to the defendant's motion. The defendant filed a reply on February 10, 2016. The parties submitted evidence in support of their own motions and in opposition to the motions against them, which will be discussed below as necessary. Oral argument was held on the motions on February 11, 2016.
I
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The defendant's motion for summary judgment is premised on the ground that the plaintiff's claim is moot and otherwise nonjusticiable. Because this motion implicates the court's subject matter jurisdiction, it is addressed first. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction .... Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable.... Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute ... (2) that the interests of the parties be adverse ... (3) that the matter in controversy be capable of being adjudicated by judicial power ... and (4) that the determination of the controversy will result in practical relief to the complainant.... A case is considered moot if [the trial] court cannot grant ... any practical relief through its disposition of the merits ...." (Citations omitted; footnote omitted; internal quotation marks omitted.) Valvo v. Freedom of Information Commission , 294 Conn. 534, 540-41, 985 A.2d 1052 (2010).
**334 The defendant argues that there is no practical or effective relief being sought by the plaintiff, or which could otherwise be awarded, because members of the plaintiff's town council were unable to identify the plaintiff's objectives in seeking a declaratory judgment. Additionally, the defendant argues that S.A. 14-21 clarified and affirmed the defendant's right to impose a nonmember surcharge on the plaintiff, such that the defendant, by imposing such surcharges prior to that legislation, was acting within its statutory authority. In opposition, the plaintiff argues there is practical relief available to it and that the statements of the town council members *207 cannot be interpreted as an admission to the contrary.
The defendant's argument concerning mootness arises from S.A. 14-21, which provides in relevant part: "The Metropolitan District is authorized to supply water to any town or city that is not a member town or city of the district, any part of which is situated not more than twenty miles from the state capitol at Hartford, or to the inhabitants thereof, or to any state facility located within such area, upon such terms as may be agreed upon, but all other sources belonging to any such town or city shall be developed by such consumer or made available for development by said district. Except as otherwise agreed between the district and a customer, the district shall supply water at water use rates and with customer service charges uniform with those charged within said district. Any nonmember town surcharge imposed on any such customer or inhabitant shall not exceed the amount of the customer service charge. The cost of constructing the pipe connection between the district and such town or city and the cost for capital improvements within such town or city shall be paid by such town or city or by the customers inhabiting such town or city. The cost of constructing the pipe connection between the district and **335 any such state facility shall be paid by the state of Connecticut. Nothing herein shall authorize The Metropolitan District to supply any water in competition with any water system in any town or city, except by agreement." (Emphasis added.)
The defendant raised a similar argument claiming mootness in a motion to dismiss, which was rejected by the court in a memorandum of decision filed on October 10, 2014. See Glastonbury v. Metropolitan District Commission , Superior Court, judicial district of Hartford, Docket No. HHD-CV-14-6049007-S (October 10, 2014) (59 Conn. L. Rptr. 108, 2014 WL 6427459). Despite the defendant's suggestion to the contrary, there is no basis for the court to revisit its previous ruling that S.A. 14-21 is not a clarifying amendment and, therefore, is not retroactive. As previously stated in the October 10, 2014 memorandum of decision, nothing in the 2014 amendment or its legislative history evidences a clear intent that the surcharge component be applied retroactively. "A statute should not be applied retroactively to pending actions unless the legislature clearly expressed an intent that it should be so applied." McNally v. Zoning Commission , 225 Conn. 1, 9, 621 A.2d 279 (1993) ; accord New Haven v. Public Utilities Commission , 165 Conn. 687, 726, 345 A.2d 563 (1974). "It is a rule of construction that statutes are not to be applied retroactively to pending actions, unless the legislature clearly expresses an intent that they shall be so applied.... 'The passage or repeal of an act shall not affect any action then pending.' General Statutes § 1-1 [u]." (Citations omitted.) New Haven v. Public Utilities Commission , supra, at 726, 345 A.2d 563.
The defendant's remaining argument in support of its motion for summary judgment concerns a different matter of justiciability, namely, whether there is any practical or effective relief available to the plaintiff. Although this argument was also rejected by the court **336 in its October 10, 2014 memorandum of decision, nonetheless, for the sake of completeness, the court further articulates as follows. "The test for determining mootness is not [w]hether the [plaintiff] would ultimately be granted relief .... The test, instead, is whether there is any practical relief this court can grant the [plaintiff]." (Internal quotation marks omitted.) *208 In re David L. , 54 Conn. App. 185, 189, 733 A.2d 897 (1999). Thus, while practical relief may be difficult to articulate or implement, if there is any practical relief available, then the court may exercise jurisdiction. See Pamela B. v. Ment , 244 Conn. 296, 313, 709 A.2d 1089 (1998) ("specter of difficulties in crafting 'practical relief' " did not bar court's assumption of jurisdiction).
The plaintiff is seeking a declaration by the court that certain surcharges imposed by the defendant were unlawful. The plaintiff is not presently seeking damages and is not obligated to do so. See General Statutes § 52-29 (a) ; see also England v. Coventry , 183 Conn. 362, 364, 439 A.2d 372 (1981) (Superior Court has subject matter jurisdiction over suits for declaratory relief despite adequacy of other legal remedies). There is no question that if the surcharges are unlawful, then the plaintiff can demonstrate damages for those years the surcharges were imposed. It may be that the plaintiff has not articulated the specific legal theory under which it would recover those damages, and it is uncertain whether the plaintiff will seek to recover those damages at all. This does not mean, however, that as a matter of law, there is no practical relief available to the plaintiff. See, e.g., Memphis Light, Gas & Water Division v. Craft , 436 U.S. 1, 8-9, 98 S. Ct. 1554, 56 L.Ed. 2d 30 (1978) ("[a]lthough we express no opinion as to the validity of respondents' claim for damages, that claim is not so insubstantial or so clearly foreclosed by prior decisions that this case may not proceed" [footnote omitted] ). Rather, allegations of ascertainable damages **337 in the form of a wrongfully imposed surcharge indicate that practical relief may be available. Finally, as this court has previously quoted in its October 10, 2014 memorandum of decision, "[a] plaintiff who wins a declaratory judgment may go on to seek further relief, even in an action on the same claim which prompted the action for a declaratory judgment. This further relief may include damages which had accrued at the time the declaratory relief was sought ...." (Internal quotation marks omitted.) Lighthouse Landings, Inc. v. Connecticut Light & Power Co. , 300 Conn. 325, 361, 15 A.3d 601 (2011) (Palmer , J. , dissenting), quoting 1 Restatement (Second), Judgments § 33, comment (c), p. 335 (1982). Accordingly, the court finds that the plaintiff's action for declaratory relief is justiciable. Thus, the defendant's motion for summary judgment must be denied.
II
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
The plaintiff's motion for summary judgment asks the court to determine, as a matter of law, that the surcharges imposed by the defendant from 2011 to 2014 were unlawful. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.... In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) Vendrella v. Astriab Family Ltd. Partnership , 311 Conn. 301, 313, 87 A.3d 546 (2014). "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party **338 for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle[s] him to a judgment as a matter of law. The courts hold the movant to a strict standard. *209 To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.... When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue." (Internal quotation marks omitted.) Romprey v. Safeco Ins. Co. of America , 310 Conn. 304, 319-20, 77 A.3d 726 (2013).
The plaintiff argues that, at the time the defendant imposed the surcharges, the General Assembly had not authorized the defendant to recover general or capital costs arising from maintenance of and improvements to the defendant's properties, facilities, and water supply infrastructure. Thus, the surcharges from 2011 to 2014 were unlawful. In its opposition, the defendant argues that it always possessed the authority to impose the surcharge.
The defendant "is a political subdivision of the state, specially chartered by the Connecticut General Assembly for the purpose of water supply, waste management and regional planning." Martel v. Metropolitan District Commission , 275 Conn. 38, 41, 881 A.2d 194 (2005). "It is settled law that as a creation of the state, a municipality has no inherent powers of its own.... A municipality has only those powers that have been expressly granted to it by the state or that are necessary for it to discharge its duties and to carry out its objects and purposes.... This principle applies with equal force to quasi-municipal corporations." (Citations omitted; internal quotation marks omitted.)
**339 Wright v. WoodridgeLake Sewer District , 218 Conn. 144, 148, 588 A.2d 176 (1991). In order to determine what powers were granted to the defendant by the state, it is appropriate to examine the legislation that undergirded the defendant's claimed authority.
Prior to the passage of S.A. 14-21, the General Assembly provided the defendant with the following powers: "The Metropolitan District is authorized to supply water, at rates uniform with those charged within said district, to any town or city, any part of which is situated not more than twenty miles from the state capitol at Hartford, or to the inhabitants thereof, or to any state facility located within such area, upon such terms as may be agreed upon, but all other sources belonging to any such town or city shall be developed by such consumer or made available for development by said district. The cost of constructing the pipe connection between the district and such town or city shall be paid by such town or city. The cost of constructing the pipe connection between the district and any such state facility shall be paid by the state of Connecticut. Nothing herein shall authorize The Metropolitan District to supply any water in competition with any water system in any town or city, except by agreement." Special Acts 1977, No. 77-62.
Under certain circumstances the defendant was additionally empowered to assess additional costs pursuant to 25 Spec. Acts 1018, No. 272 (1949), which provided: "The Metropolitan District is authorized to assess the cost of laying water mains in streets or highways and the cost of laying or replacing water service pipes upon public or private property upon the land and buildings benefitted thereby in any town which is not a member of said district, but in which it shall have the right either under the terms of its charter or otherwise to supply or distribute water, and to secure payment thereof by lien. Such assessment and lien rights may be exercised **340 by the water bureau of said district under procedure substantially similar to *210 that for like assessments made upon property located within the territorial limits of said district."
Thus, the defendant's authorization to impose fees on the plaintiff was limited to the following: (1) a charge for supplying water; (2) a charge for constructing the pipe connection between the district and the municipality; and (3) a charge for laying water mains and for laying or replacing water service pipes upon the land and buildings benefitted thereby. Nevertheless, beginning in 2011, the plaintiff saw a marked increase in the amount of the surcharge. In a February 15, 2013 letter from Scott Jellison, Deputy Chief Executive Officer of the defendant, the complained of increase was explained as reflecting the "fixed costs associated with producing drinking water," such as "watershed lands" and "treatment plants."[3] The evidence indicates that, at **341 least as of the time of the increase, the surcharge was not confined to the cost of laying and repairing water service pipes and water mains to benefit particular customers. Rather, it encompassed the defendant's costs in maintaining the entire water utility infrastructure, spread among all of its customers in nonmember towns.
Moreover, the General Assembly authorized the defendant to recover costs associated with the construction and maintenance of water pipes only from those customers whose property was directly benefitted from those pipes. Because the General Assembly did not authorize the defendant to recover its water utility infrastructure or capital improvement costs, the surcharge included costs that the defendant was not authorized to impose upon the plaintiff, and, therefore, it was illegal as a matter of law.
In light of the determination that the surcharge was illegal as a matter of law, the defendant is left to rely on its special defenses. As a bar to judgment, the defendant raises the defense of laches.[4] "A
*211 conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made [as a matter of law], unless the subordinate facts found make such a conclusion inevitable .... The defense of laches, if proven, bars a plaintiff from seeking equitable relief .... First, there must have been a delay that was inexcusable, **342 and, second, that delay must have prejudiced the defendant.... The mere lapse of time does not constitute laches ... unless it results in prejudice to the [opposing party] ... as where, for example, the [opposing party] is led to change his position with respect to the matter in question." (Citations omitted; internal quotation marks omitted.) Caminis v. Troy , 112 Conn. App. 546, 552, 963 A.2d 701 (2009), aff'd, 300 Conn. 297, 12 A.3d 984 (2011).
In support of the defense of laches, the defendant notes that the complained of surcharge on nonmember towns goes back to 1942. The defendant argues that the passage of almost seventy years between the first surcharge and the plaintiff's first objection in 2011 constitutes an unreasonable delay that has prejudiced the defendant. The plaintiff counters that its claim is limited to a declaration regarding the surcharges from 2011 to 2014 and does not concern the surcharges prior to 2011. Consequently, the defendant is not prejudiced by being asked to address such recent concerns. Finally, the plaintiff contends that its delay in complaining about the surcharge was not unreasonable because the surcharges before 2011 were for only nominal amounts, and the surcharges thereafter reflect substantial increases, which prompted the plaintiff to investigate the nature of the surcharge.
The defendant has submitted evidence indicating that the plaintiff became a nonmember town in 1941 and that the nonmember town surcharge was first imposed in 1942. The surcharge was increased in the years 1949 and 1955, and then annually between 2006 and 2014. In the period from 2006 to 2011, the amount of the quarterly surcharges wavered between $10 and $13. The quarterly surcharge increased from $13.17 in 2011 to $39.54 in 2012. It jumped to $105.75 in 2013 before decreasing to $49.74 in 2014. The plaintiff did not complain about the surcharge until 2012. The defendant **343 maintains that the surcharge provided stability and the foundation to equitably distribute the cost of maintenance and improvements to the system and that it is prejudiced by the plaintiff's untimely pursuit of this claim. According to the defendant, had the plaintiff made a complaint earlier, the defendant could have addressed it by making changes to the way customers were charged for water.
Upon review of the evidence submitted by the defendant in support of its special defense of laches, the court finds, under all the circumstances, it was not unreasonable for the plaintiff to have delayed challenging the surcharge until 2014. For most of the time that the surcharge was in place, it was for a small amount. After remaining relatively stable for many years, it increased by nearly 300 percent in 2012 and nearly 800 percent in 2013. It was the sharp increase that prompted the plaintiff *212 to complain about the surcharge and to investigate its origins. Upon concluding that there was no legal basis for the surcharge, the plaintiff swiftly set to challenge the defendant's interpretation of its assessment authority under the charter. Communications thereafter indicated that the recent increase in the surcharge included costs that were not within the defendant's power to impose. Additionally, other than its argument that an earlier complaint may have led to earlier action, the defendant has failed to demonstrate how it was led to change its position with respect to the imposition of the surcharge, as is necessary for a showing of prejudice. Therefore, based on the subordinate facts, the evidence presented by the defendant does not support a special defense of laches. Therefore, the special defense of laches does not bar the plaintiff's motion for summary judgment. **344 III
CONCLUSION
The General Assembly did not provide the defendant with any express authority to impose a nonmember town surcharge until the enactment of S.A. 14-21, which amended the defendant's governing legislation. As discussed at length in the court's earlier decision denying the defendant's motion to dismiss, S.A. 14-21 does not apply retroactively so as to sanction the defendant's imposition of the nonmember town surcharge. Likewise, as noted elsewhere in the present memorandum of decision, S.A. 14-21 is not a confirmation or clarification of any implicit authority that the defendant already possessed. The defendant has otherwise failed to offer an interpretation of the governing legislation that supports its contention that it possessed the authority to impose the surcharge. Upon review of the grants of authority made to the defendant, the court is compelled to conclude that the surcharge, which encompassed general costs that the defendant was not expressly empowered to impose upon the plaintiff, was unlawful.
For all the foregoing reasons, the court finds that (1) the plaintiff's action for declaratory relief is justiciable, (2) the surcharge imposed by the defendant on the plaintiff was illegal, and (3) none of the claimed special defenses serves to bar judgment. Accordingly, the defendant's motion for summary judgment is hereby denied and the plaintiff's motion for summary judgment is hereby granted.

The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Number 14-21, § 1, of the 2014 Special Acts provides in relevant part: "The Metropolitan District is authorized to supply water to any town or city that is not a member town or city of the district, any part of which is situated not more than twenty miles from the state capitol at Hartford, or to the inhabitants thereof, or to any state facility located within such area, upon such terms as may be agreed upon .... Except as otherwise agreed between the district and a customer, the district shall supply water at water use rates and with customer service charges uniform with those charged within said district. Any nonmember town surcharge imposed on any such customer or inhabitant shall not exceed the amount of the customer service charge. The cost of constructing the pipe connection between the district and such town or city and the cost for capital improvements within such town or city shall be paid by such town or city or by the customers inhabiting such town or city. The cost of constructing the pipe connection between the district and any such state facility shall be paid by the state of Connecticut. Nothing herein shall authorize The Metropolitan District to supply any water in competition with any water system in any town or city, except by agreement."

We note that the trial court's memorandum of decision on the parties' motions for summary judgment incorporated by reference that court's prior ruling on the defendant's motion to dismiss, in which the court rejected the defendant's contention that the plaintiff's claim was rendered moot by S.A.14-21. See Glastonbury v. Metropolitan District Commission , Superior Court, judicial district of Hartford, Docket No. HHD-CV-14-6049007-S (October 10, 2014) (59 Conn. L. Rptr. 108, 2014 WL 6427459).

The defendant also claims that the trial court improperly denied its motion to strike because the plaintiff failed to join as indispensable parties the approximately 9000 individual customers in the nonmember towns. The defendant did not claim before the trial court that the 9000 individual customers in the nonmember towns were indispensable parties but claimed only that the nonmember towns themselves were indispensable parties. We decline to address the defendant's unpreserved challenge to the trial court's ruling on the motion to strike. See, e.g., Safford v. Warden , 223 Conn. 180, 189-90, 612 A.2d 1161 (1992) ("our general rule [is] that legal claims not raised at trial are not cognizable on appeal").

Member towns are Bloomfield, East Hartford, Hartford, Newington, Rocky Hill, West Hartford, Wethersfield and Windsor.

General Statutes § 52-29 (a) provides: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."

The relevant portions of the letter provided as follows: "Generally, water bills for customers in our member and [nonmember] towns are the same with the exception of the [Nonmember] Town (NMT) charge. Per [the defendant's] ordinances, [nonmember] town customers may also pay a Special Capital Improvement Surcharge to reimburse the [defendant] for the cost of capital improvements necessary to provide or maintain water service to their specific community. These charges are applied, in whole or in part, to fairly distribute and offset operational, maintenance and infrastructure improvement costs which cannot be passed on to our member towns.
"As a nonprofit municipal corporation, the [defendant] bases its water rates and projected revenue on anticipated consumption for the year in order to recover costs to produce drinking water. However, the fixed cost to maintain the water utility infrastructure, such as watershed lands, treatment plants, and pipes, typically increases annually, as we are subject to the same increases in price that consumers experience for electricity, fuel, natural gas, chemicals and other commodities. As with most water utilities across the country, declining water consumption makes it impossible to predict revenue for budgeting purposes to recover annual operating cost. Due to this decline, and upon recommendation of our rating agencies, the fixed costs associated with producing drinking water were shifted to the Water Customer Service Charge and NMT charges. These charges provide a more stable source of revenue than the Water Consumption Charge and are not subject to the same environmental and economic facts that affect consumption."

The two other special defenses asserted by the defendant are either not viable or contingent on the defense of laches. The defendant's third special defense, that the plaintiff lacks standing to bring an action on behalf of the defendant's other customers, concerns an issue of subject matter jurisdiction. The plaintiff argues that it is not acting on behalf of the defendant's other customers and concedes that the court may limit the granting of declaratory relief to the plaintiff. This court has already determined that the plaintiff has standing to bring this action in its own name. Therefore, the third special defense does not bar summary judgment in favor of the plaintiff.
The fourth special defense of equitable jurisdiction is derivative of the laches defense such that it rises and falls with the validity or invalidity of the laches defense.