******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JUAN MIELES
## (SC 20947)

Mullins, C. J., and McDonald, D'Auria, Ecker and Dannehy, Js.

*Syllabus*

The defendant, who previously had been convicted of risk of injury to a child, appealed, on the granting of certification, from the judgment of the Appellate Court. The Appellate Court had upheld the trial court's decision to grant the state's motion for a standing criminal protective order prohibiting, inter alia, the defendant's contact with the victim. The trial court had issued this order approximately nine years after the defendant was sentenced in connection with his risk of injury conviction. The defendant claimed, inter alia, that the trial court had improperly issued the protective order without a finding of changed circumstances. *Held*:

The trial court having failed to apply, in issuing the protective order in question, the proper legal standard under the statute (§ 53a-40e) governing standing criminal protective orders, this court concluded that the Appellate Court had improperly upheld the trial court's decision to issue the protective order, reversed the Appellate Court's judgment, and remanded the case with direction to vacate the order.

Contrary to the Appellate Court's conclusion, the defendant adequately briefed his claim before the Appellate Court that additional requirements, beyond those expressly set forth in § 53a-40e, apply to a trial court's determination of whether it should issue a standing criminal protective order after a defendant has been sentenced for the underlying offense.

A review of the text of § 53a-40e and its legislative history led this court to conclude that, before a court determines whether to exercise its discretion to issue a standing criminal protective order postsentencing, it must make certain predicate findings, namely, that the defendant had been convicted of a qualifying offense set forth in § 53a-40e (a) (1) or (2), that the history and character and nature and circumstances of the defendant's criminal conduct indicate that a standing criminal protective order will best serve the interests of the victim and the public, and that additional evidence, not presented to the sentencing court at the time of sentencing, also indicates that a standing criminal protective order will best serve the interests of the victim and the public.

In the present case, the trial court made no finding either that the defendant had been convicted of a qualifying offense or that, on the basis of the history and character and nature and circumstances of the defendant's criminal conduct, a protective order would best serve the interests of the victim and the public, and the state did not present any evidence or make any claim

that additional evidence beyond what was presented at the defendant's sentencing, also supported the interests of the victim and the public.

Argued December 11, 2024—officially released April 29, 2025

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree and risk of injury to a child, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, where the defendant was presented to the court, *Devlin, J.*, on a plea of guilty of risk of injury to a child; judgment of guilty in accordance with the plea; thereafter, the state entered a nolle prosequi as to the charge of sexual assault in the first degree; subsequently, the court, *Russo, J.*, granted the state's motion for a standing criminal protective order as to the victim, and the defendant appealed to the Appellate Court, *Bright, C. J.*, and *Cradle, J.*, with *Moll, J.*, dissenting, which affirmed the trial court's order, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Tatiana A. Messina*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DANNEHY, J. This appeal requires us to clarify the standards that apply to a trial court's determination to impose a postsentencing standing criminal protective order pursuant to General Statutes § 53a-40e (a).[1] The

---

[1] General Statutes § 53a-40e (a) provides in relevant part: "If any person is convicted of, or found not guilty by reason of mental disease or defect of, (1) a violation of section 53a-70b of the general statutes, revision of 1958, revised to January 1, 2019, or subdivision (1) or (2) of subsection (a) of section 53-21, section 53a-59, 53a-59a, 53a-60, 53a-60a, 53a-60b, 53a-60c, 53a-70, 53a-70a, 53a-70c, 53a-71, 53a-72a, 53a-72b, 53a-73a, 53a-181c, 53a-181d, 53a-181e, 53a-182b or 53a-183, subdivision (2) of subsection (a) of section

defendant, Juan Mieles, appeals from the judgment of the Appellate Court, which affirmed the trial court's imposition of a standing criminal protective order against him more than nine years after he was sentenced. The defendant claims that the Appellate Court (1) incorrectly concluded that he did not challenge the imposition of the standing criminal protective order on the basis that the trial court had failed to abide by the standard applicable to such orders set forth in § 53a-40e (a), and (2) improperly issued the protective order in the absence of a finding of changed circumstances. We agree with the defendant that he adequately briefed his claim before the Appellate Court that the trial court had employed an incorrect legal standard in issuing the postsentencing criminal protective order. Although we disagree with his characterization that § 53a-40e (a) requires a finding of changed circumstances, we conclude that, when a standing criminal protective order is issued postsentencing, in addition to its express requirements, § 53a-40e also requires the issuing court to find that additional evidence, which had not been presented to the sentencing court, demonstrates that the issuance of the protective order would "best serve the interest of the victim and the public . . . ." General Statutes

53a-192a, section 53a-223, 53a-223a or 53a-223b or attempt or conspiracy to violate any of said sections or section 53a-54a, or (2) any crime that the court determines constitutes a family violence crime, as defined in section 46b-38a, or attempt or conspiracy to commit any such crime, the court may, in addition to imposing the sentence authorized for the crime under section 53a-35a or 53a-36, if the court is of the opinion that the history and character and the nature and circumstances of the criminal conduct of such offender indicate that a standing criminal protective order will best serve the interest of the victim and the public, issue a standing criminal protective order which shall remain in effect for a duration specified by the court until modified or revoked by the court for good cause shown. . . ."

Although § 53a-40e has been amended by the legislature since the trial court imposed the postsentencing standing criminal protective order in the present case; see, e.g., Public Acts 2024, No. 24-137, § 8; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

§ 53a-40e (a). Accordingly, we reverse the judgment of the Appellate Court and remand the case to that court with direction to vacate the trial court's order.

The following facts and procedural history are relevant to the resolution of this appeal. In 2012, the defendant pleaded guilty to one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2) in connection with his June 7, 2011 conduct with a seven year old girl.[2] As a condition of the defendant's bond, the court ordered him to have no contact with the victim or anyone associated with her. Later in 2012, the defendant was sentenced to fifteen years of incarceration, execution suspended after five years, followed by twenty-five years of probation. As one of the conditions of his probation, the sentencing court prohibited the defendant from contacting the victim.[3]

In 2021, approximately nine years after the defendant had been sentenced, the state sought a standing criminal protective order against him pursuant to § 53a-40e

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[3] Although the defendant has abided by the condition of his probation barring him from contacting the victim, he has twice violated other conditions of his probation. He was last convicted of a violation of probation in 2017 and was sentenced to nine years of incarceration, execution suspended after three years, followed by twenty years of probation, with all original conditions of probation reimposed. Accordingly, he will be on probation until sometime in 2040.

The defendant was also convicted in 2019, upon his guilty plea, of failure to appear in the first degree. He was sentenced to one year of incarceration, to run concurrently with his 2017 sentence for a violation of probation. *State* v. *Mieles*, 221 Conn. App. 164, 169–70 and n.4, 301 A.3d 1063 (2023).

(a). At the hearing on the state's motion seeking the protective order, the state presented no testimony or other evidence, and did not provide the court with transcripts of the defendant's sentencing or plea hearings. Instead, during argument in support of its motion, the prosecutor represented to the court that the victim's advocate had informed the state that the victim's mother told the advocate that she believed that a protective order was issued on behalf of the victim at the time the defendant was sentenced. The prosecutor informed the trial court that the sentencing court had imposed a no contact order as a condition of the defendant's probation but had not issued a standing criminal protective order. The prosecutor also represented to the court that the victim's mother had told the victim's advocate that she sought the additional protection of a standing criminal protective order because she feared that the defendant may attempt to contact the victim after he completed his probation.[4]

In opposition to the state's motion, defense counsel argued that, during the more than nine years since the defendant's sentencing, there had been no suggestion that he had attempted to contact the victim or her family in violation of the sentencing court's no contact order. In addition, defense counsel took issue with this court's holding in *State* v. *Alexander*, 269 Conn. 107, 847 A.2d 970 (2004), that a standing criminal protective order is nonpunitive and, therefore, can be imposed postsentencing. See id., 119–20. Defense counsel contended that the imposition of a standing criminal protective order against the defendant would be punitive. Finally, defense counsel argued that, because the protective order was not a part of the original plea agreement, and because a plea agreement has qualities of a contract,

[4] The trial court relied on the prosecutor's representations at the hearing to find that the victim's mother "*was told* at disposition that there would be a standing order as part of the disposition." (Emphasis added.)

the common-law defense of laches applied. Specifically, defense counsel contended that the state's delay in seeking the standing criminal protective order was inexcusable and that such an order would prejudice the defendant because it would expose him to additional criminal liability.[5]

After hearing the parties' arguments, the trial court acknowledged the defendant's continued compliance with the no contact order but explained that it was obligated to follow *State* v. *Alexander*, supra, 269 Conn. 107, which permits a court to impose a standing criminal protective order postsentencing. Id., 120. The court imposed the protective order and noted that, in light of the belief of the victim's mother that the sentencing court issued one in 2012, failing to impose the order would implicate the integrity of the criminal justice system. Among the other terms and conditions of the order, the defendant was required to have no contact with the victim and to remain at all times at least 100 yards away from her.[6] The order was set to remain in effect for forty years.

---

[5] Defense counsel did not contend that the state's *delay* in seeking the protective order prejudiced the defendant. See *Glastonbury* v. *Metropolitan District Commission*, Superior Court, judicial district of Hartford, Docket No. CV-14-6049007-S (May 12, 2016) (reprinted at 328 Conn. 330, 341–42, 179 A.3d 205) (This court set forth the following elements of the defense of laches: "First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the [opposing party] . . . as [when], for example, the [opposing party] is led to change his position with respect to the matter in question." (Internal quotation marks omitted.)), aff'd, 328 Conn. 326, 179 A.3d 201 (2018).

[6] The remaining terms and conditions of the order required the defendant (1) to surrender or transfer all firearms and ammunition; (2) to refrain from assaulting, threatening, abusing, harassing, following, interfering with or stalking the victim; (3) to stay away from the home of the victim and wherever the victim may reside; and (4) to refrain from contacting the victim's home, workplace or others with whom the contact would be likely to cause annoyance or alarm to the victim.

The defendant appealed to the Appellate Court, claiming, among other things, that the trial court had abused its discretion in imposing the protective order because there was no evidence of a change in circumstances since the defendant's sentencing that would have justified opening the judgment of conviction to impose the order. The defendant asserted that the issuance of a standing criminal protective order postsentencing constitutes a modification of the criminal judgment of conviction and argued that, although *Alexander* permits the issuance of such an order postsentencing pursuant to § 53a-40e (a), the statutory standards that a court must follow when adding the order to an existing judgment are unclear. The applicable standard, he argued, requires the state to demonstrate a change in circumstances by a preponderance of the evidence before the court may open a judgment to add a standing criminal protective order. In support of his argument, the defendant highlighted different areas of the law in which the court must consider additional evidence before it may open or modify a judgment.[7]

The defendant further argued that, because § 53a-40e (a) is ambiguous as to the standard that applies to the imposition of a postsentencing standing criminal protective order, it is appropriate to consult the statute's legislative history. See General Statutes § 1-2z. That history, he argued, reveals that the legislature intended for a standing criminal protective order to be issued postsentencing only upon a showing of new information or evidence. The defendant relied on the legislative history to support his claim that the issuance of a standing criminal protective order after sentencing modifies the judgment and therefore requires a finding of changed circumstances. Although the defendant's

---

[7] For example, the defendant cited to the standard for opening and modifying a civil judgment. See General Statutes § 52-212a.

briefs were somewhat unclear, he also argued, independent of and in addition to his arguments predicated on the theory that issuing such orders postsentencing requires opening the judgment, that the legislative history supported his position that a change of circumstances was required for the issuance of a standing criminal protective order postsentencing.

In a split decision, the Appellate Court upheld the imposition of the protective order. *State* v. *Mieles*, 221 Conn. App. 164, 175–80, 301 A.3d 1063 (2023). The disagreement between the Appellate Court majority and the dissent centered on their differing interpretations of the defendant's arguments on appeal.

The majority explained that, in its view, the "crux" of the defendant's argument was his contention that the imposition of the protective order constituted a modification of the judgment and, therefore, required a change in circumstances. Id., 175. Rejecting that argument, the majority explained that a protective order is "separate and distinct from the criminal judgment . . . ." Id., 176. Because the issuance of the order did not modify the judgment, the majority reasoned that the state did not need to present evidence of a change in circumstances before the order could be issued. Id. The majority then stated that the defendant had asserted that § 53a-40e (a) fails to provide any guidance as to the proper standard that must be applied when a trial court imposes a standing criminal protective order. Id., 177. The majority disagreed and observed that § 53a-40e (a) provides that "a trial court may impose a standing criminal protective order 'if the court is of the opinion that the history and character and the nature and circumstances of the criminal conduct of such offender indicate that a standing criminal protective order will best serve the interest of the victim and the public.' " Id. The majority further indicated that, because the defendant "ha[d] not challenged the imposition of the

contested order on the ground that the court failed to abide by [that] statutory standard,'' the claim was inadequately briefed, and the court declined to address that issue.[8] Id., 177–78.

Judge Moll, in dissent, disagreed with the majority's characterization of the defendant's claim. Id., 183–84 n.1 (*Moll, J.*, dissenting). She concluded that the defendant's claim on appeal was not limited to the proposition that the issuance of the protective order constituted a modification of the judgment. Id., 183 n.1 (*Moll, J.*, dissenting). In her view, threaded throughout the defendant's argument was the contention that § 53a-40e (a) required that the trial court be presented with evidence of a change in circumstances before it could issue a standing criminal protective order postsentencing. Id., 183–84 n.1 (*Moll, J.*, dissenting). Judge Moll agreed with the defendant on this point and would have held that the court abused its discretion in issuing the order because the court was not provided with the necessary information that would have allowed it to make a decision in conformance with the appropriate standard under § 53a-40e (a). Id., 182–83 and n.1 (*Moll, J.*, dissenting).

This court granted the defendant's petition for certification, limited to the following two issues: ''(1) Did the Appellate Court correctly determine that the defendant did not challenge the imposition of the standing criminal protective order on the ground that the trial court had failed to abide by the standard applicable to the imposition of such orders set forth in . . . § 53a-40e (a)?'' And ''(2) [i]f the answer to the first question is 'no,' did the trial court fail to abide by the standard set forth in

---

[8] The Appellate Court majority did not address the defendant's argument that the legislative history of § 53a-40e reveals that the legislature intended that, when a trial court issues a standing criminal protective order postsentencing, the court must rely on new information or evidence in issuing the order. See generally *State* v. *Mieles*, supra, 221 Conn. App. 175–80.

§ 53a-40e (a), and did it abuse its discretion in imposing the standing criminal protective order under the circumstances of this case?" *State* v. *Mieles*, 348 Conn. 920, 920–21, 303 A.3d 1195 (2023).

I

We first consider whether the Appellate Court correctly determined that the defendant failed to challenge the imposition of the standing criminal protective order on the ground that the trial court had failed to abide by the applicable standard set forth in § 53a-40e. Although the Appellate Court majority correctly determined that the defendant did not base his claim on the trial court's failure to apply the express requirements set forth in § 53a-40e, we nevertheless conclude that he adequately briefed his argument that additional requirements, beyond those expressly set forth in the statute, apply when a standing criminal protective order is issued postsentencing.

The Appellate Court majority correctly characterized the defendant's primary claim on appeal to that court. He contended that a standing criminal protective order issued postsentencing modifies the judgment and therefore requires an issuing court to find a change of circumstances. Our review of the defendant's Appellate Court briefs persuades us that the majority also correctly concluded that the defendant did not predicate his challenge to the issuance of the standing criminal protective order on the *express* standards set forth in § 53a-40e (a), which are the only statutory standards that apply to the issuance of such orders *at the time of sentencing*. As we have summarized in this opinion, however, the defendant also argued, for the first time before the Appellate Court, that an additional standard applies when a court issues such orders postsentencing. Although the argument could have been set forth more clearly, separate from and in addition to his argument that the postsentencing issuance of a standing crimi-

nal protective order modifies the judgment, the defendant contended that § 53a-40e (a) was ambiguous as to whether, postsentencing, the issuing court must also find a change of circumstances in order to find that issuing the order would "best serve the interest of the victim and the public . . . ."[9] General Statutes § 53a-40e (a). The legislative history of § 53a-40e (a), he claimed, resolves the ambiguity, demonstrating that the legislature intended to impose this additional requirement when a court issues a standing criminal protective order postsentencing. We thus disagree with the Appellate Court majority's conclusion that this issue was inadequately briefed.

## II

Having concluded that the defendant adequately briefed his claim before the Appellate Court, we turn to the second certified question, whether the trial court failed to abide by the standard applicable to the imposition of a postsentencing standing criminal protective order pursuant to § 53a-40e (a), and whether the trial court abused its discretion by imposing the postsentencing order.

The question of what standards govern the trial court's decision to issue a standing criminal protective order postsentencing pursuant to § 53a-40e (a) presents a question of statutory construction over which we

[9] Although the issue was adequately briefed before the Appellate Court, we note that, before the trial court, defense counsel did not argue that the court should apply a different legal standard in determining whether to issue a postsentencing standing criminal protective order. Rather, he simply maintained that, "over the past nine and [one-half] years, there have been no suggestions that [the defendant] has been in contact with the [victim], the [victim's] family or otherwise." To the extent that the issue may be unpreserved due to the defendant's failure to raise it before the trial court, it is nonetheless reviewable because the record is adequate for review, the parties have had the opportunity to be heard, and the state has not argued that we should decline to review the issue. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 155–58, 84 A.3d 840 (2014).

exercise plenary review, guided by established principles for discerning legislative intent. See, e.g., *Fay* v. *Merrill*, 336 Conn. 432, 446, 246 A.3d 970 (2020) (describing plain meaning rule, as set forth in § 1-2z, and principles for discerning legislative intent).

We begin with the text of § 53a-40e (a), which provides in relevant part: "If any person is convicted of . . . (1) a violation of . . . subdivision (1) or (2) of subsection (a) of section 53-21 . . . or attempt or conspiracy to violate [subdivision (1) or (2) of subsection (a) of section 53-21] . . . or (2) any crime that the court determines constitutes a family violence crime, as defined in section 46b-38a, or attempt or conspiracy to commit any such crime, the court may, in addition to imposing the sentence authorized for the crime under section 53a-35a or 53a-36, if the court is of the opinion that the history and character and the nature and circumstances of the criminal conduct of such offender indicate that a standing criminal protective order will best serve the interest of the victim and the public, issue a standing criminal protective order which shall remain in effect for a duration specified by the court until modified or revoked by the court for good cause shown. . . ."

The statutory text expressly requires a trial court to make two findings before it may exercise its discretion to issue a standing criminal protective order: (1) that the defendant was convicted of one of the qualifying offenses, including those expressly enumerated in the statute and any offense the court finds constitutes a "family violence crime, as defined in section 46b-38a," and (2) that "the history and character and the nature and circumstances of the criminal conduct of such offender indicate that a standing criminal protective order will best serve the interest of the victim and the public . . . ." General Statutes § 53a-40e (a).

The statutory text is clear that these two expressly required findings suffice to authorize the court to issue a standing criminal protective order "in addition to imposing the sentence authorized for the crime . . . ." General Statutes § 53a-40e (a). Indeed, by characterizing a standing criminal protective order as issued "in addition" to the imposition of the sentence; General Statutes § 53a-40e (a); the statutory text suggests that such orders generally are to be issued *at the time of sentencing.* Although the statute is silent as to whether such orders may also be issued after sentencing, this court's decision in *Alexander* clarified that, because § 53a-40e is nonpunitive, a standing criminal protective order may be imposed postsentencing. *State* v. *Alexander*, supra, 269 Conn. 119–20.

In *Alexander*, the defendant claimed that the issuance of a standing criminal protective order affected his sentence and that, because § 53a-40e (a) did not expressly authorize the courts to modify a defendant's sentence, the court lacked subject matter jurisdiction to issue the order postsentencing. Id., 112. We observed that this court previously had held that, because the sex offender registration requirements are not punitive, either in law or in fact, trial courts have jurisdiction after sentencing to make the factual findings that trigger the registration requirements. Id., 114–15; see *State* v. *Waterman*, 264 Conn. 484, 487, 492–93, 825 A.2d 63 (2003). Relying on *Waterman* in *Alexander*, we examined § 53a-40e (a) to determine whether standing criminal protective orders are punitive. *State* v. *Alexander*, supra, 269 Conn. 115–16. Concluding that the statutory language was ambiguous, we turned to legislative history and noted that the purpose of such orders is not to punish defendants but, rather, to protect victims. Id., 116–18. Our holding in *Alexander*, however, was confined to the narrow question of whether trial courts have jurisdiction to issue such orders postsentencing. See id., 119. We did not

consider whether the standards for issuing such orders postsentencing are identical to the standards that apply at the time of sentencing.

In resolving one ambiguity—by concluding that a standing criminal protective order is nonpunitive and may be issued postsentencing—this court's decision in *Alexander* injected a new ambiguity into § 53a-40e (a) because there are two reasonable interpretations of the statutory language regarding what standards apply to the imposition of a postsentencing standing criminal protective order. See, e.g., *Marchesi* v. *Board of Selectmen,* 309 Conn. 608, 615, 72 A.3d 394 (2013) (test to define ambiguity is whether statute, "when read in context, is susceptible to more than one reasonable interpretation" (internal quotation marks omitted)). The statute provides that the court may issue a standing criminal protective order *in addition to the* sentencing if "the history and character and the nature and circumstances of the criminal conduct of such offender" indicate that such an order will best serve the interest of the victim and the public. General Statutes § 53a-40e (a). One reasonable reading of the statute, therefore, is that, even when a standing criminal protective order is issued postsentencing, the same standards apply, and the court may consider only the "history and character and the nature and circumstances of the criminal conduct of such offender," up to the time of sentencing. General Statutes § 53a-40e (a). An equally reasonable reading, however, relying on the statutory phrase "history and character and the nature and circumstances"; General Statutes § 53a-40e (a); which has a temporal aspect, is that, when such orders are issued postsentencing, the court's consideration includes conduct up to the time of postsentencing issuance. That is, at the time of issuance in the postsentencing context, the court may consider whether there are additional events

or conduct that establish that a standing criminal protective order would best serve the victim and the public.

Related statutes fail to resolve the ambiguity. Other statutes that authorize courts to impose protective or restraining orders include General Statutes § 46b-15 (domestic violence restraining orders); General Statutes § 46b-16a (civil protection orders); General Statutes § 46b-38c (family violence protective orders); General Statutes § 54-1k (criminal protective orders); General Statutes § 54-63c (family violence protective orders); General Statutes § 54-82q (temporary restraining order for witnesses); and General Statutes § 54-82r (protective orders for witnesses). None of the orders authorized by these statutes, however, generally is issued at the time of sentencing or requires proof of a conviction as a predicate to the court's exercise of its discretion to issue the protective order. These statutes, therefore, do not shed light on whether different standards may apply to the issuance of a standing criminal protective order postsentencing.

The legislative history of the original enactment in 1996 of § 53a-40e provides helpful insight into the legislature's intent on this question. In her initial summary of the proposed legislation, its proponent, Representative Ellen Scalettar, explained that the need to provide this type of protection to victims came to the attention of the legislature through the "continuing plight of Tracey Thurman Motuzick . . . ." 39 H.R. Proc., Pt. 10, 1996 Sess., pp. 3325–26. When Motuzick's former husband, who had repeatedly assaulted her, completed his jail and probation period in 1996, there were questions about whether, and for how long, she could obtain a restraining order. See id., p. 3326. The bill was intended to provide greater protection to victims of domestic violence and to relieve them of the burden of seeking a restraining order at the conclusion of a defendant's

sentence.[10] Id. Representative Scalettar stated several times that the bill would permit a court to impose a standing criminal protective order "at the time of sentencing." Id., pp. 3326, 3326–27. When Representative Dale W. Radcliffe asked whether a court other than the sentencing court could issue a standing criminal protective order, Scalettar initially repeated and emphasized her position that the sentencing court should issue such orders "at the time of sentencing . . . ." Id., pp. 3332, 3333. Radcliffe then clarified that he was referring to a situation in which there was additional evidence, not presented to the sentencing court, that a defendant had engaged in acts of violence or made threats. Id., p. 3333. By way of illustration, he said, "I am thinking of a situation [in] which . . . [a]n individual was . . . particularly violent during incarceration; made threats against an individual while incarcerated; information that might not necessarily involve the underlying offense or [have] been brought to the attention of the court at the time of the sentencing." Id. Radcliffe further questioned whether, if presented with such "additional evidence," a court other than the sentencing court could issue a standing criminal protective order "at a later time . . . ." Id., p. 3334. Scalettar responded in the affirmative. Id. As to the nature of such evidence, Scalettar agreed with Radcliffe that evidence that a defendant has engaged in violent conduct or threatened the victim would suffice for the issuance of a postsentencing standing criminal protective order. Id. This exchange is strong evidence of the legislature's intent, showing that, although it believed a protective order pursuant to § 53a-40e would normally be issued at the time of sentencing, there may be circumstances postsentencing

---

[10] Section 54-1k (a) contemplates the issuance of a criminal protective order prior to any finding of guilt with respect to any of the crimes delineated in that subsection. Section 54-1k (b) provides that such an order shall be made a condition of a defendant's bail or release, but it does not suggest that a similar order can be issued postsentencing.

that would warrant the imposition of a standing criminal protective order when a court is presented with "additional evidence . . . ." Id.

We look to the statutory text of § 53a-40e (a) for additional guidance as to the nature of the additional evidence. Specifically, at the time of sentencing, in order to issue a protective order, the court must find "that the history and character and the nature and circumstances of the criminal conduct of such offender indicate that a standing criminal protective order will best serve the interest of the victim and the public . . . ." General Statutes § 53a-40e (a). It stands to reason that the additional evidence presented in support of issuing a standing criminal protective order postsentencing must support the same finding. That is, the court must find that the additional evidence indicates that a standing criminal protective order will best serve the interest of the victim and the public.

Consistent with the legislative intent evinced by the legislative history, we conclude that, before determining whether to exercise its discretion to issue a standing criminal protective order postsentencing, the issuing court must make the predicate findings that (1) the defendant has been convicted of a qualifying offense set forth in either § 53a-40e (a) (1) or (2); (2) the "history and character and the nature and circumstances of the criminal conduct of such offender indicate that a standing criminal protective order will best serve the interest of the victim and the public"; General Statutes § 53a-40e (a); and (3) additional evidence, not presented to the sentencing court, also indicates that a standing criminal protective order will best serve the interest of the victim and the public.[11]

---

[11] We recognize that the requirement of "additional evidence" is similar to the defendant's proposed requirement of a change of circumstances. We emphasize, however, that our conclusion does not rely on the defendant's proposed theory—that a standing criminal protective order modifies the judgment. In *State* v. *Waterman*, supra, 264 Conn. 484, this court rejected the defendant's claim that the trial court lacked jurisdiction postsentencing

In the present case, the trial court did not ground its decision to issue the postsentencing criminal protective order on the proper legal standard pursuant to § 53a-40e. The court made no finding that the defendant had been convicted of one of the qualifying offenses[12] or that, on the basis of the "history and character and the nature and circumstances of the criminal conduct" of this defendant, issuing the standing criminal protective order would best serve the interest of the victim and

to make the factual finding that triggered the requirement that the defendant register as a sex offender. Id., 489. The nonpunitive nature of the registration requirement, the court reasoned, meant that its imposition "did not necessitate any modification, opening or correction of the sentence." Id., 497. The registration requirement, the court explained, was neither a sentencing factor nor a sentencing enhancement but, rather, a "regulatory incident of the judgment." Id., 498. This court subsequently has relied on *Waterman* for the proposition that not all orders issued at the time of sentencing are necessarily part of the judgment. Some orders issued at sentencing, specifically those that are nonpunitive in nature, are "incident" to the judgment of conviction. See, e.g., *State* v. *T.R.D.*, 286 Conn. 191, 223, 942 A.2d 1000 (2008) (registration requirement is not punitive but, rather, "a 'separate regulatory incident' of a criminal judgment of conviction"); *State* v. *Pierce*, 269 Conn. 442, 448 n.5, 849 A.2d 375 (2004) (in light of nonpunitive nature of sex offender registration requirements, postsentencing finding that activated registration requirement "did not necessitate any modification, opening or correction of the defendant's sentence"). Although a standing criminal protective order is first available at the time of sentencing, we have made clear that, if imposed, the order is not part of the defendant's sentence. *State* v. *Alexander*, supra, 269 Conn. 119. Like the sex offender registration requirement, a standing criminal protective order does not affect a defendant's sentence and, instead, is nonpunitive incident to the judgment of conviction, the imposition of which does not require that the judgment be opened, modified or corrected.

[12] We recognize that § 53a-40e (a) has undergone significant changes since the defendant's 2012 sentencing—some of which are directly relevant to the present case. See, e.g., Public Acts 2014, No. 14-234, § 8. Accordingly, if the state subsequently were to decide to file a new application for a standing criminal protective order against the defendant, a question would arise as to whether applying the 2021 revision of § 53a-40e to him would constitute an improper retroactive application. Neither of the parties raised this issue before the trial court or the Appellate Court. Although the state mentioned this potential question both in its brief and during oral argument before this court, neither the state nor the defendant presented any argument on this issue. Because we will not speculate as to whether the state will decide to file an application for a standing criminal protective order following this decision, we decline to reach this issue.

the public. General Statutes § 53a-40e (a). Further, the state did not present any evidence (or make any claim) to establish that additional information, not presented to the court at the time of sentencing, also supported this same interest. Instead, without hearing any evidence, the court issued the order on the basis of its finding that the sentencing court mistakenly failed to impose one at the time of sentencing, predicated solely on the representations of the prosecutor. The trial court, therefore, applied an incorrect legal standard in issuing the standing criminal protective order.

On the basis of the foregoing, we conclude that the trial court abused its discretion in issuing the protective order. See, e.g., *Morris* v. *Morris*, 262 Conn. 299, 305, 811 A.2d 1283 (2003) ("[n]otwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling on a modification may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law" (internal quotation marks omitted)).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to vacate the trial court's order.

In this opinion the other justices concurred.